# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUNO MAGANA,<br><br>                    Plaintiff,<br>   vs.<br><br>COUNTY OF SAN DIEGO; BOGAR ORTIZ; RUSSELL RYAN; DOES 1-20, inclusive,<br><br>                    Defendants. | CASE NO. 10-cv-1334 – IEG (BGS)<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT<br><br>[Doc. No. 14] |

    This is a civil rights action pursuant to 42 U.S.C. § 1983 brought by Bruno Magana for personal injuries and violation of constitutional rights by County of San Diego and its sheriff's deputies, Bogar Ortiz and Russell Ryan. Currently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, the Court **DENIES** the motion.

## BACKGROUND

    This case arises from an incident at the Jumping Turtle nightclub on April 18, 2009. Magana was 17 years old at the time, 5'4" tall, and weighed 125 pounds. He was a high school student and worked at a pet store in Oceanside. He was also a musician.

**I.    Magana's version of the arrest**

    On April 18, 2009, at approximately 10:45 p.m., Magana was inside the Jumping Turtle nightclub attending a music show that permitted minors and adults alike. Magana's boss was the

lead singer of the headliner band that was playing. Earlier in the evening, Magana had placed his jacket/sweatshirt on the stage while he was helping the band set up.

According to Magana, suddenly someone announced that the show was over and everyone had to leave. Magana was part of the large crowd that began moving toward the exit. He was also moving toward his jacket, which was still on the side of the stage. As Magana stepped toward his jacket, Deputy Ortiz suddenly confronted him and told him he had to leave. Magana said he just needed his jacket and picked it up off the stage. As he did so, Deputy Ortiz grabbed his arm and yanked it up, while Deputy Ryan rushed up and grabbed Magana around the neck. Both deputies then dragged Magana out the door, to a walkway outside the front door.

Once outside, the deputies allegedly shoved Magana against a wall, with Magana's face hitting the wall. Deputy Ryan then slammed Magana to the ground, face first, near the corner of the building. Magana's face hit the corner of the building, fracturing his nose and causing lacerations to his face. After Magana's face hit the ground, the deputies pulled his hands behind his back and handcuffed him. Magana alleges that by this time his face and head were bleeding profusely. While Magana was on the ground, Deputy Ryan continued choking him. Magana lost consciousness for some period of time. Magana was then walked/dragged to a police car by the deputies. At one point they stopped, and Deputy Ryan punched Magana in the face.

Magana was placed in a police car and taken to the San Marcos sheriff's station until his mother arrived to pick him up. He was released from custody at that time. His mother took him to the hospital immediately. There it was determined that Magana suffered a fractured nose and a concussion. Several stitches were required to close the cut on the bridge of his nose. The fractured nose required surgery, which was performed several days later.

**II.   Deputies' version of the arrest**

Law enforcement officers arrived at the Jumping Turtle nightclub after the private security staff requested help dispersing the disorderly crowd. Although the officers were initially instructed to stand-by outside, they were eventually requested to enter the bar to make everyone leave. Many patrons were still inside the bar. Deputy Ortiz and Deputy Ryan positioned themselves near the stage and began instructing patrons to exit.

1    According to Deputy Ortiz, when he came in contact with Magana, he told Magana to exit
2 the bar. Magana instead rushed at him and hit his left shoulder and back. Deputy Ortiz grabbed
3 Magana's right arm and Deputy Ryan immediately grabbed his left arm. Deputy Ryan also put
4 Magana in a headlock in an attempt to apply the carotid restraint and escort Magana out of the bar.
5 Magana was allegedly thrashing about as he was being escorted out of the building.

6    Once outside, Magana allegedly refused to comply with the deputies' instructions to get on
7 the ground, and as a result was taken to the ground when Deputy Ryan swept his legs. While
8 falling, Magana hit his head against the fencing outside the bar. Once on the ground, Magana put
9 his hands underneath him and continued to struggle. At one point, Deputy Ryan thought Magana
10 was attempting to grab for his taser. As a result, Deputy Ryan shifted his weight and applied the
11 carotid restraint, causing Magana to pass out for about three seconds. Magana was then
12 handcuffed. The deputies then escorted Magana to the patrol car. While on their way to the
13 vehicle, Magana began kicking at Deputy Ryan's direction. Fearing Magana was going to assault
14 him, Deputy Ryan struck Magana once in the right side of his face with his right fist.

15 **III.   Juvenile court proceedings**

16    Several weeks after the incident, Magana was notified that he was being charged in
17 juvenile court with a felony, Penal Code § 69 (resisting arrest by force), and a misdemeanor, Penal
18 Code § 148. Magana alleges these charges were based upon false police reports submitted by the
19 deputies. Magana appeared in juvenile court with his mother and a lawyer, and denied all charges
20 and allegations. At a hearing on July 28, 2009, Magana was told that if he complied with several
21 conditions requested by the judge, his case would be dismissed. Magana agreed to comply with
22 the conditions and did so. This was an informal supervision contract pursuant to California
23 Welfare and Institutions Code § 654.2. Six months later, Magana again appeared in juvenile court
24 with his mother and the charges against him were dismissed in their entirety.

25    The juvenile court order included the following requirements and conditions: (1) Magana
26 and his mother were required to report to the Probation Center for a contract compliance meeting
27 with a review officer; (2) Magana and his mother were required to participate in counseling; (3)
28 Magana was not allowed to leave home without his parents' permission; (4) Magana was required

to keep his school attendance and grades up; (5) Magana had to complete 40 hours of community service work; (6) Magana had to complete a Juvenile Reckless Behavior (Anger Management) course; (7) Magana was placed on curfew, whereby he had to remain at his house between the hours of 8 p.m. and 6 a.m.; (8) Magana was ordered to stay away from club scenes; (9) Magana was ordered to write a letter of apology to Deputy Ortiz; (10) Magana was ordered to write a letter of apology to his parents; (11) Magana was ordered not to be at any location where alcohol was being consumed unless he was with a parent.

**IV.     Procedural history**

Magana filed his Complaint on June 24, 2010, alleging six causes of action: (1) unlawful seizure and excessive force pursuant to 42 U.S.C. § 1983; (2) unlawful policies, customs, or habits pursuant to 42 U.S.C. § 1983; (3) state law negligence; (4) state law battery; (5) state law false arrest; and (6) civil rights violations pursuant to California Civil Code § 52.1.  Defendants filed their Answer on September 14, 2010.  On September 29, 2011, Defendants moved for summary judgment on all claims.  Magana filed an opposition, and Defendants filed a reply.  The Court heard oral argument on Defendant's motion on December 7, 2011.

**LEGAL STANDARD**

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material issue of fact is a question that a trier of fact must answer to determine the rights of the parties under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323.  To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322.  Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the

nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A party asserting that a fact is genuinely disputed cannot rely solely on its pleadings, but must support that assertion with affidavits, depositions, or answers to interrogatories. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). To avoid summary judgment, the non-moving party need not produce evidence in a form that would necessarily be admissible at trial. *Celotex*, 477 U.S. at 324. However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *See Hernandez*, 343 F.3d at 1112; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

**DISCUSSION**

Defendants' main argument in their motion for summary judgment is that Magana's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* generally bars a civil action if it is inconsistent with a prior criminal conviction or sentence arising out of the same facts, unless the conviction or sentence has been subsequently resolved in plaintiff's favor. As Magana argues, however, there is no criminal conviction in this case. Moreover, allowing the present suit to proceed will not result in a decision contrary to the juvenile court proceedings. Finally, *Heck* does not apply where the plaintiff had no opportunity to challenge his "conviction" via habeas relief. Accordingly, the Court concludes that *Heck* is inapplicable in this case.

**I.    *Heck* requires that there be an underlying conviction.**

In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

> order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486-87 (citations omitted). Thus, in essence, *Heck* requires the reviewing court to ask three questions: (1) Is there an underlying conviction or sentence that would conflict with the present § 1983 action? (2) Would the judgment in favor of the plaintiff "necessarily imply" or demonstrate the invalidity of the prior conviction or sentence? (3) If so, was the prior conviction or sentence already invalidated or otherwise favorably terminated? *See, e.g.*, *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam) ("*Heck* precludes a section 1983 claim based on actions which would 'render [1] a conviction or sentence [2] invalid' where [3] that conviction has not been reversed, expunged or called into question by issuance of a writ of habeas corpus. *Heck*, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." (internal citation omitted)).

In this case, Defendants' motion fails at the first inquiry because there is no criminal conviction or sentence that could be invalidated by Magana's success in his § 1983 action. The Supreme Court recently noted that an existence of an actual conviction is a condition *sine qua non* for the application of the *Heck* bar. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007) (concluding that petitioner could have brought his § 1983 action challenging his false arrest immediately after being arrested, without waiting for the resolution of his criminal case, and stating that *Heck* would not be a bar because there has been no conviction yet). In the present case, Magana was not convicted of *any* crime. Rather, he received informal supervision that culminated in the dismissal of all charges against him in the juvenile court. Accordingly, *Heck* is inapposite and the *Heck* bar does not even come into play. *See McClish v. Nugent*, 483 F.3d 1231, 1251 (11th Cir. 2007) ("*Heck* is inapposite. The issue is not, as the district court saw it, whether Holmberg's

1  participation in [Florida's pretrial intervention program] amounted to a favorable termination on
2  the merits. Instead, the question is an antecedent one—whether *Heck* applies at all since
3  Holmberg was never convicted of *any* crime."); *Butler v. Compton*, 482 F.3d 1277, 1279-80 (10th
4  Cir. 2007) (concluding that *Heck* did not bar plaintiff's § 1983 action based on police officer's
5  conduct that occurred during an arrest resulting in two burglary charges where those two charges
6  were subsequently dismissed, even though they were dismissed as part of a plea agreement
7  pursuant to which plaintiff pleaded guilty to three other unrelated burglary charges).

8       Several federal courts of appeal have concluded that a pretrial diversion program, where
9  there is no conviction, does not bar a subsequent civil action under *Heck*. *See, e.g.*, *Vasquez*
10  *Arroyo v. Starks*, 589 F.3d 1091, 1095 (10th Cir. 2009) (relying on *Wallace* in holding that
11  Kansas's pre-trial diversion agreement, which results in a deferral of prosecution of the offense, is
12  not an outstanding conviction, and therefore the *Heck* bar does not apply); *S.E. v. Grant Cnty. Bd.*
13  *of Educ.*, 544 F.3d 633, 637-39 (6th Cir. 2008) (concluding that *Heck* did not bar student's § 1983
14  suit alleging that investigation that led to her placement in juvenile diversion program violated her
15  constitutional rights); *McClish*, 483 F.3d at 1251-52 (finding that the dismissal of the charge
16  against plaintiff pursuant to Florida's pretrial intervention program did not amount to a
17  "conviction," and therefore *Heck* was inapplicable to plaintiff's § 1983 suit challenging his arrest).
18  *But see Gilles v. Davis*, 427 F.3d 197, 209-12 (3d Cir. 2005) (concluding that plaintiff's
19  participation in Pennsylvania's Accelerated Rehabilitative Disposition program, which permits
20  expungement of the criminal record upon completion of a probationary term, did not amount to a
21  favorable termination of the prior criminal proceeding, and therefore plaintiff's § 1983 suit for
22  First Amendment violations was barred by *Heck*); *DeLean v. City of Corpus Christi*, 488 F.3d 649,
23  654-56 (5th Cir. 2007) (concluding that a deferred adjudication order under Texas law, which was
24  entered after plaintiff pleaded guilty to an aggravated assault on a police officer and where the
25  charges have not been dismissed yet, was an equivalent of a "conviction," and therefore *Heck*
26  barred plaintiff's § 1983 suit for false arrest).

27       More importantly, *Heck* does not bar a § 1983 suit where the plaintiff had no recourse to
28  the habeas corpus statute. In *Spencer v. Kemna*, the Supreme Court dismissed as moot an inmate's

1 habeas corpus petition challenging revocation of his parole where the inmate has completed the
2 entire term of imprisonment. 523 U.S. 1, 17-18 (1998). The majority of Justices in *Spencer*,
3 however, noted that the inmate had a viable § 1983 suit despite the unavailability of habeas corpus
4 relief. *See id.* at 19 (Souter, J., concurring) ("*Heck* did not hold that a released prisoner in
5 Spencer's circumstances is out of court on a § 1983 claim, and for reasons explained in my *Heck*
6 concurrence, it would be unsound to read either *Heck* or the habeas statute as requiring any such
7 result. For all that appears here, then, Spencer is free to bring a § 1983 action, and his
8 corresponding argument for continuing habeas standing falls accordingly."); *id.* at 21-22
9 (Ginsburg, J., concurring); *id.* at 25 n.8 (Stevens, J., dissenting) ("Given the Court's holding that
10 petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice
11 SOUTER explains, that he may bring an action under 42 U.S.C. § 1983.").

12 The Ninth Circuit has embraced the approach suggested by Justice Souter's concurrence in
13 *Spencer* (which was joined by three other Justices) and Justice Stevens's dissent. Analyzing the
14 interplay between *Heck* and *Spencer*, the Ninth Circuit has held that *Heck* does not bar a § 1983
15 suit where, despite diligent efforts, the plaintiff had no habeas corpus relief available to him. *See*
16 *Nonnette v. Small*, 316 F.3d 872, 877 (9th Cir. 2002) (concluding that a § 1983 action challenging
17 denial of good-time credits was not barred by *Heck* where, despite timely pursuit of available
18 remedies, the plaintiff has been released from incarceration and habeas relief was no longer
19 available); *see also Medeiros v. Clark*, 713 F. Supp. 2d 1043, 1056 (E.D. Cal. 2010) (concluding
20 that *Heck* did not bar plaintiff's § 1983 suit for wrongful arrest where the charges against plaintiff
21 were dismissed after his participation in a pre-trial diversion program and where plaintiff had no
22 habeas remedy available); *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*, 387 F.
23 Supp. 2d 1084, 1092 (N.D. Cal. 2005) ("Under Ninth Circuit law, therefore, where habeas is not
24 available through no fault of the plaintiff, *Heck* does not bar a § 1983 suit.").

25 Defendants' reliance on California case law to the contrary is not persuasive. Defendants
26 rely on the California Court of Appeal's decision in *Lujano v. County of Santa Barbara*, which
27 held that plaintiff's informal juvenile probation pursuant to Section 654 of the California Welfare
28 and Institutions Code—the same statute that is applicable in this case—barred her § 1983 suit for

1 false arrest because it was not a "favorable termination" of the criminal charges against her. 190
2 Cal. App. 4th 801, 807-09 (2011). Specifically, the Court of Appeal concluded:

> Having elected to proceed under section 654, having submitted to the power of the State and its programs for counseling and education, and having obtained a shield to further prosecution upon successful completion of the program, Lujano may not now complain that she is barred from seeking civil redress under section 1983. Her option was to deny her culpability and put the State to its proof.

*Id.* at 809 (citation omitted). As Magana points out, however, by asking whether the criminal charges against Lujano resulted in a "favorable termination," the court in *Lujano* appears to misapprehend *Heck*. The first inquiry under *Heck* is whether there was a conviction or sentence to begin with. If there is no conviction or sentence that would be necessarily called into doubt by the § 1983 suit, then *Heck* does not apply at all.[1] *See McClish*, 483 F.3d at 1251; *Butler*, 482 F.3d at 1279-80. Moreover, to the extent that *Lujano* suggests that informal supervision pursuant to § 654 is equivalent of a conviction, the Court rejects such a suggestion. *See Arroyo*, 589 F.3d at 1095; *S.E.*, 544 F.3d at 637-39; *McClish*, 483 F.3d at 1251-52. Finally, because there is no habeas relief available to someone in Lujano and Magana's position, the decision in *Lujano* appears to be contrary to the Ninth Circuit's decision in *Nonnette*. *See Nonnette*, 316 F.3d at 877.

Accordingly, the Court concludes that *Heck* does not apply. Magana was never convicted of anything or sentenced by the juvenile court. He never pleaded guilty to the criminal charges leveled against him, and, upon his successful completion of the informal supervision, those charges were dismissed in their entirety. Moreover, Magana had no recourse to the habeas corpus statute to challenge his informal supervision. Accordingly, *Heck* does not apply to bar his § 1983 suit. *See Heck*, 512 U.S. at 486-87; *Nonnette*, 316 F.3d at 877.

**II.     *Heck* requires that the § 1983 suit "necessarily imply" or demonstrate that the plaintiff's early conviction was invalid**.

In any event, *Heck* does not apply unless the pursuit of the § 1983 suit would "necessarily imply" the invalidity of the prior conviction or sentence. *See* 512 U.S. at 486-87. As the Ninth Circuit explained, "a § 1983 action is not barred under *Heck* unless it is clear from the record that

---

[1] As Magana notes, one way to explain *Lujano* is by the fact that plaintiff's counsel inexplicably agreed that *Heck* barred Lujano's excessive force claims and made no argument on appeal concerning the applicability and effect of *Heck*. *See Lujano*, 190 Cal. App. 4th at 806 n.3. As noted above, and in more detail below, that is not the case here.

its successful prosecution would *necessarily* imply or demonstrate that the plaintiff's earlier conviction was invalid." *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc). In *Smith*, the plaintiff pleaded guilty to resisting an officer, was convicted on that basis, and his conviction was not "reversed, expunged, declared invalid, or called into question by issuance of a writ of habeas corpus." *Id.* at 696. Nonetheless, it was possible that the guilty plea referred to the acts taken before the arrest, in which case plaintiff's § 1983 suit for excessive force *subsequent* to arrest would still be viable. *Id.* at 696-98. Because the record did not disclose which acts formed the basis for the plaintiff's guilty plea, the Ninth Circuit concluded that "Smith's success in the present action would not necessarily impugn his conviction." *Id.* at 698-99. Accordingly, *Heck* did not bar plaintiff's § 1983 suit. *Id.* at 699.

In the present case, even if Magana's informal supervision could be considered an equivalent of a "conviction," it is not clear that the prosecution of his § 1983 suit would necessarily imply or demonstrate the invalidity of that "conviction." As Magana argues, there is simply nothing in the record on which the Court could base that conclusion. Magana denied all counts and allegations, he did not plead guilty to anything, he never had any evidence introduced against him, and he was never convicted of anything. (*See* Magana Decl. ¶¶ 14-15 [Doc. No. 22-2]; De Garcia Decl. ¶¶ 7-8 [Doc. No. 22-3].) Accordingly, because it is not only unclear, but impossible for the Court to determine, whether the successful prosecution of Magana's § 1983 action would *necessarily* imply or demonstrate that Magana's informal supervision was invalid, *Heck* does not bar his suit.[2] *See Heck*, 512 U.S. at 486-87; *Smith*, 394 F.3d at 698-99.

### III.   Other contentions

Defendants contend they are entitled to summary judgment on Magana's *Monell* cause of

---

[2] Defendants' reliance on *Yount v. City of Sacramento*, 43 Cal. 4th 885 (2008), is misplaced. In that case, the California Supreme Court concluded that to the extent Yount was challenging the officers' use of force against him, the success in his § 1983 action would necessarily imply the invalidity of his conviction for resisting an officer. *Id.* at 898. Unlike this case, however, (1) Yount pleaded no contest to several charges; (2) he stipulated to the facts in count one, which charged him with resisting an officer; and (3) the trial court found a factual basis for the plea as to each count. *Id.* at 891. None of that is present here.

action.³ Magana indicates that he has decided not to pursue his *Monell* claim and thus has no objection to its dismissal. Accordingly, the Court **DISMISSES** Magana's second cause of action alleging a *Monell* claim against Defendant County of San Diego.

Finally, Defendants contend in a conclusory manner that partial summary adjudication is proper as to some of the claims because those claims fail to raise a triable issue of material fact. However, viewing the facts in the light favorable to Magana, Defendants are not entitled to summary judgment finding that the force used was not excessive. *See Smith*, 394 F.3d at 700-03. Rather, because it appears that there are genuine issues of material fact present as to whether the force used against Magana was reasonable, and because a reasonable jury could conclude that the forced used against him was excessive, summary judgment is not proper at this stage. *See Anderson*, 477 U.S. at 250; *see also Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." (citing cases)).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment. However, because Magana does not object to the dismissal of his *Monell* claim, the Court **DISMISSES** his second cause of action against the County of San Diego.

**IT IS SO ORDERED.**

**Date: December 19, 2011**

                                                *Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

³ *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).